## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH M. BROWN<br>520 Freedom Drive<br>Yardley, PA 19067 | :<br>:<br>:    **CIVIL ACTION**<br>: |
| Plaintiff, | :<br>:    **No.:** |
| v. | :<br>: |
| MJH HEALTHCARE HOLDINGS, LLC,<br>d/b/a MICHAEL J. HENNESSY AND<br>ASSOCIATES<br>2 Clark Drive, Suite # 100<br>Cranberry, NJ 08512<br>    and<br>MICHAEL J. HENNESSY AND<br>ASSOCIATES, INC.<br>2 Clark Drive, Suite # 100<br>Cranberry, NJ 08512<br>    and<br>MJH ASSOCIATES, INC., d/b/a<br>MICHAEL J. HENNESSY AND<br>ASSOCIATES<br>2 Clark Drive, Suite # 100<br>Cranberry, NJ 08512<br>    and<br>ROBERT GOLDSMITH<br>2 Clark Drive, Suite # 100<br>Cranberry, NJ 08512 | :<br>:    **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiff, Elizabeth M. Brown (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## I.  **Introduction**

1.     Plaintiff has initiated this action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA - 29 U.S.C. § 201 *et. seq*.), the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1 *et. seq*.), and other applicable state law(s). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.     **Jurisdiction and Venue**

2.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact(s).

3.     This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.    **Parties**

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual with an address as set forth above.

7.      Defendants MJH Healthcare Holdings, LLC (hereinafter "Defendant Holdings" if referred to individually), Michael J. Hennessy and Associates, Inc. (hereinafter "Defendant MJH" if referred to individually) and MJH Associates, Inc. (hereinafter "Defendant Associates" if referred to individually) all operate as a single enterprise.  By way of examples:

- Plaintiff was paid employee compensation through Defendant Holdings and received documentation (taxes, benefits and otherwise) as an employee through this entity;

- Plaintiff's written offer of employment and employment documentation came from Defendant MJH;

- Defendants Holdings and MJH hold themselves out as operating under Defendant Associates publicly. *See e.g.* company enterprise website at https://www.mjhassoc.com (identifying Defendant Associates as the manager, operator and enterprise running Defendants Holdings and MJH);

- Defendant Associates identified itself as Plaintiff's employer in sending her post-termination correspondence reminding her of "confidentiality" obligations under her employment-policy obligation with Defendants;

- These 3 entities operate from same physical address in Cranbury, New Jersey;

- These 3 entities use overlapping resources, advertising, and management to operate as a single enterprise;

- These 3 entities use their names interchangeably on information to the public and to employees;

- These 3 entities are identified on several websites identifying corporate data as being the operator, manager, and employer of the business in which Plaintiff was employed; and

- These 3 entities appear to use business-entity names out of convenience in preferred representations to third parties and the public, as opposed to any formal delineation between corporate operations.

8.      The above-referenced examples are not intended to be an exhaustive list; but rather, a series of examples showing a single enterprise. They therefore should be properly

considered Plaintiff's joint, single or integrated employer for the purposes of this lawsuit.[1] These 3 business Defendants will hereinafter be collectively referred to as "Defendant Entities."

9.     Defendant Robert Goldsmith (hereinafter "Defendant Goldsmith" if referred to individually) is a high-level manager and executive of Defendant Entities.

10.    At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

## IV.   **Factual Background**

11.    The foregoing paragraphs are incorporated herein as if set forth in full.

12.    Plaintiff was offered employment by Defendants by letter dated December 28, 2017, and Plaintiff physically commenced working for Defendants on or about January 8, 2018.

13.    Plaintiff was hired to work in the position of National Accounts Associate ("NAA"), and this is the position she held for the duration of her employment with and for Defendants.

14.    As an NAA, Plaintiff was responsible for offering promotional opportunities, tracking and maintaining pipeline and business activity, and servicing new or repeat business. The types of materials Plaintiff attempted to promote for Defendants included informational resources, ad pages, marketing services, media-related products, and other forms of product communications. Plaintiff was a promotional-related production employee for Defendants' revenue stream.

---

[1] Plaintiff reserves the right to move for amendment to include additional entities following initial discovery on corporate identities (as for example, the entities also appear to operate under numerous other trade names such as Onclive, Intellisphere, etc...).  And likewise, Plaintiff would be amendable to withdrawal of a particular identified entity if convinced following initial discovery that any such business could not properly or legally construed as a single, joint or integrated employer of Plaintiff.

15.     Plaintiff worked under the supervision of Defendant Goldsmith who oversaw Plaintiff and similarly situated employees. Defendant Goldsmith at all times relevant herein worked for Defendant Entities as an executive overseeing Defendants' sales.

16.     In total, Plaintiff was employed with Defendants for approximately 7 full months. During this time, Plaintiff functioned as an "inside sales" or "inside promotional" employee for Defendants.[2] Inside sales (or promotional) employees are not exempt from overtime compensation, yet Defendants failed and/or refused to pay Plaintiff for overtime compensation.

17.     Plaintiff was paid a salary of $42,500 annually in addition to commissions.[3] Commissions or other incentives were a small component of Plaintiff's overall income (although commissions bear no significance to Plaintiff's overtime exemption status).

18.     Although Plaintiff was paid a salary and performed a promotional role, she did not qualify for any type of state or federal overtime exemption, including but not limited to the overtime exemption (for *outside sales*) under the FLSA at 29 CFR § 541.500 because this specific overtime exemption **only** applies to an employee "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."[4]

19.     Plaintiff **was not** during her period of employment "*customarily and regularly engaged in sales away from*" Defendant's physical location. She did not perform sales on a

---

[2] An "inside" salesperson is an employee who makes sales inside his or her place of business, which contrasts with the outside salesperson, exempt under the FLSA, who must be "customarily and regularly engaged away from the employer's place of business." 29 C.F.R. § 541.500.

[3] Information concerning commissions, incentives and bonuses are relevant herein because such additional income is properly includable in Plaintiff's payrate for inclusion of overtime calculations. *See 29 CFR 778.117 et. seq.*

[4] New Jersey has adopted the federal regulations exempting outside salesmen from payment of minimum and overtime wages. *See* N.J.A.C. 12:56–7.2 (adopting 29 C.F.R. 541.500, defining outside sales employees under the FLSA).

door-to-door basis, she did not travel from customer-to-customer daily, and she worked from Defendants' fixed employment location customarily performing sales (which is well known to be inside sales, not applicable to any overtime exemption).[5] Plaintiff only sporadically performed work outside of her office location with third-parties.

20.     More specifically, Plaintiff spent *well **under*** 10% of her normal work hours month meeting any actual clients or prospective customers outside of her workplace (whereby she may work weeks without performing minimal travel outside of Defendant's physical location). Her normal workday and workweek consisted of physically working and performing sales solely from Defendants' workplace with occasional travel.[6]

21.     To provide examples of just how sporadic Plaintiff performed any work outside the office in sample months (through her 7-month tenure):

> May 2018: Plaintiff physically worked solely within Defendants' office from May 1, 2018 through May 30, 2018 performing all promotion work by telephone, e-mail and ***without any*** outside in-person contacts or solicitations.

> June 2018: Plaintiff physically worked solely within Defendant's office from June 4, 2018 through June 30, 2018 performing all promotion work by telephone, e-mail and without any outside in-person contacts or solicitations with the exception of 1 short lunch meeting with a third party on or about June 26, 2018.

---

[5] *See* 29 CFR 541.502 (giving examples of the type of outside sales person that would meet being customarily working away from an employer's location to include "selling door-to-door," at "customer home(s)," and pervasive travel).

[6] *See e.g. Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895, 901 (N.D. Ohio 2006), aff'd, 249 F. App'x 441 (6th Cir. 2007)(granting judgment in favor of plaintiff, a loan officer, who occasionally traveled to meet with clients but explaining where sales work was primarily performed from office of employer . . . the employer could not possibly meet the "customarily working away from employer's location" requirement and further explaining that such work is inside sales at most); *Reich v. Chicago Title Ins. Co.*, 853 F. Supp. 1325, 1332 (D. Kan. 1994)(granting judgment as a matter of law that escrow closers who perform promotional activities primarily from the office with occasional third-party meetings with clients cannot meet the outside sales exemption); *Billingslea v. Brayson Homes, Inc.*, 2006 WL 562198, at *9 (N.D. Ga. Mar. 7, 2006)(granting judgment in favor of plaintiffs on outside sales exemption because real estate sales people who worked primarily within Defendant's office community did not customarily work away from the business like traveling sales people intended for the exemption).

22.     Plaintiff's typical workweeks were never less than 55 hours per week and often in excess of 70 hours per week. Plaintiff was never paid at a rate of time and one half for any overtime hours as legally mandated under the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJ WHL").

23.     Plaintiff in fact memorialized via text messages to Defendants' management that she was working up to "a 70 hour week." In response, Defendants' management memorialized via text message to Plaintiff: "You're going to have to get used to working on the weekends and getting back at it on Monday. This is not a 40 hour per week job . . . [u]ltimately as a sales person your numbers will reflect how much you're putting in."

24.     It was known to Defendants that Plaintiff was customarily working from their physical office, performing an inside-sales role (at best) and that Plaintiff was working weekends, nearly 70-hour workweeks, and that they were never paying Plaintiff for any overtime compensation.

25.     Plaintiff remains owed in excess of $25,000.00 in overtime compensation in addition to liquidated damages (double damages).[7] While willfulness is not a perquisite to

---

[7] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc.*, 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County*, 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

liquidated damages, Defendants' actions as aforesaid were at all times willful, intentional and knowing as they intended to exploit their sales or promotional employees while failing to maintain legally-mandated time records of hours worked by similarly situated employees (and Plaintiff).[8]

26.     On multiple occasions leading up to her unexpected and abrupt termination from employment, Plaintiff also engaged in federally-protected activities under the FLSA by informing her direct and indirect management (such as Defendant Goldsmith, Tom Tolve, and Brian Haug) that she believed she was not being paid overtime compensation properly under the law(s). Goldsmith exhibited tremendous hostility for Plaintiff raising such concerns.

27.     Defendant Goldsmith exhibited very poor management, as he conducted himself inappropriately and unprofessionally and appeared blatantly retaliatory. This atmosphere of the workplace ratified screaming and yelling by management towards staff.

28.     In addition to Defendant Goldsmith exhibiting animosity because of Plaintiff's legally-protected concerns for denial of overtime compensation, Defendant Goldsmith also exhibited clear displeasure and antagonism for Plaintiff's health problems surfacing in the weeks leading up to her termination from employment.

29.     In particular, Plaintiff has and continues to suffer from long-term, back and spinal-related health problems (constituting a clearly recognized disability under the NJ LAD). In the weeks leading up to Plaintiff's precipitous termination: (a) Plaintiff required multiple medical appointments; (b) informed Defendants of her need for surgery to take place on August 24, 2017; (c) provided Defendants with medical documentation of her health conditions

---

[8] The failure of an employer to abide by mandatory record-keeping of hours worked by an employee violates 29 U.S.C. § 211(c).  As a result, an employer's estimates of hours typically worked may be accepted.  *See e.g. Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *8 (S.D.N.Y. 2004)

(including on the very day Defendant later terminated her); and (d) requested a 2-week medical leave following her surgery (a very reasonable medical accommodation).

30.     Prior to complaints of overtime violations and pre-medical needs-accommodations being expressed, Plaintiff did not receive any progressive discipline and had received praise for her performance.   In addition to having no admonishment or warning concerning any performance-related problem, Plaintiff had also been told by Defendant Goldsmith that she was "right on track" with how well she was performing shortly before her pretextual termination.

31.     Plaintiff was terminated on or about August 9, 2018 shortly after complaints of overtime violations and her aforesaid medical disclosures and requested accommodations. The circumstances of Plaintiff's termination clearly illustrate she was terminated for (unlawful) discriminatory and retaliatory reasons.

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Wages)**
**- Against All Defendants -**

32.     The foregoing paragraphs are incorporated herein as if set forth in full.

33.     At all times relevant herein, Defendants, are and continue to be, an "employer" within the meaning of the FLSA.

34.     At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

35.     The FLSA requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

36.     At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

37.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

38.     Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay for each hour that she worked over 40 each workweek.

39.     As a result of Defendants' failure to pay Plaintiff the overtime compensation due her, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

40.     Defendant Goldsmith is personally liable as he directly failed to properly compensate employees such as Plaintiff.[9]

### Count II
### Violations of the Fair Labor Standards Act ("FLSA")
### (Retaliation)
### - Against All Defendants -

41.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.     Plaintiff expressly complained to high levels of management about non-payment of overtime compensation (primarily toward the end of her tenure with Defendants).

43.     Defendants retaliated against Plaintiff by exhibiting animosity and ultimately terminating Plaintiff.

---

[9] "[A]n individual is subject to liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *White v. Eberle & Bci Servs.*, 2013 U.S. Dist. LEXIS 7542 (D.N.J. 2013); *see also Narodetsky v. Cardone Indus., Inc.*, 2010 U.S. Dist. LEXIS 16133, 2010 WL 678288 (E.D. Pa. 2010)(management may be individually liable under the FLSA for involvement in payroll and/or adverse actions with employment).

44.     Any retaliation against Plaintiff for exercising her statutory rights to complain of unpaid overtime was *per se* unlawful.  *See Kasten v. Saint-Gobain Performance Plastics* Corp., 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011)(it is illegal under the FLSA to retaliate against an employee for verbal or written concerns of unpaid overtime compensation).

### Count III
### Violations of the New Jersey Wage & Hour Law(s) ("NJ WHL")
### (Failure to Pay Overtime Wages and Base Hourly Wages)
### - Against All Defendants -

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     The NJ WHL is interpreted in the same manner as the FLSA as to overtime obligations and exemptions.

47.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I of this Complaint as they constitute identical violations of the NJ WHL.

### Count IV
### Violations of the New Jersey Law against Discrimination ("NJ LAD")
### (Discrimination & Retaliation)
### - Against All Defendants -

48.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.     Plaintiff requested very reasonable accommodations of for medical appointments and an approximate 2-week medical leave of absence.  Plaintiff was terminated because of her actual or perceived disabilities and in retaliation for her requested medical accommodations.

50.     This unlawful discrimination and retaliation constitutes a violation of the NJ LAD.

**Count V**
**Violations of the Conscientious Employee Protection Act ("CEPA")**
**(Retaliation)**
**- Against All Defendants -**

51.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.    Plaintiff reasonably complained about the non-payment of wages and overtime compensation to people in her position such as herself and related to many other people perform the same or similar job.  Plaintiff reasonably believed Defendants were violated state and federal laws.

53.    As a direct, actual and proximate cause of Plaintiff objecting to unlawful compensation of her and similarly situated employees, Plaintiff was terminated.  And Plaintiff's termination for making good-faith complaints of illegality constitute a violation of CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings and any other owed compensation.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered legal violations at the hands of Defendants until the date of verdict;

B.    Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: August 28, 2018